NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

SKY WOLF SALES, etc., Respondent.

No. 71–2569.

United States Court of Appeals, Ninth Circuit.

Dec. 7, 1972.

Michael F. Messitte, Atty. (argued), Warren M. Davison, Deputy Asst. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Peter G. Nash, Gen. Counsel, Washington, D. C., Roy O. Hoffman, Director, Region 20, NLRB, San Francisco, Cal., for petitioner.

A. Roger Jeanson (argued), George J. Tichy, II, of Littler, Mendelson & Fastiff, San Francisco, Cal., David W. Leahy, of Wylie, Leahy, Blunt & McBride, San Jose, Cal., for respondent.

Before DUNIWAY and WRIGHT, Circuit Judges, and RENFREW,* District Judge.

RENFREW, District Judge:

The National Labor Relations Board ("Board") seeks enforcement of its order based upon the finding that Sky Wolf Sales d/b/a Pacific Industries, of San Jose ("Sky Wolf") has violated § 8(a)(1), (3), and (5) of the National Labor Relations Act, as amended, pursuant to section 10(e), 29 U.S.C. § 160(e). The Board's decision is reported at 189 NLRB No. 135. On the record as a whole, we hold the findings of the Board as to each of the violations to be supported by substantial evidence. Accordingly, the Board's petition for enforcement of its order is granted.

I

On July 9, 1968, Glaziers & Glassworkers Local Union No. 1621, Brotherhood of Painters, Decorators, and Paperhangers of America, AFL–CIO ("Union"), was certified as statutory representative of Sky Wolf's employees at the San Jose facility. Subsequent to certification, the parties engaged in collective bargaining but did not reach agreement until June 16, 1969. This agreement expired on June 30, 1969, and thereafter further negotiations were held between the Union and the Sequoia Employers Council ("Council") for Sky Wolf.

On July 10, 1969, one year and one day after certification, a petition was filed with the Board's Regional Office, seeking to decertify the Union as the statutory representative of Sky Wolf's employees. The Board found the management of Sky Wolf to have been involved in the circulation of this petition. When the parties next met on July 17, 1969, the Council indicated that the decertification petition created a "good faith" doubt as to Sky Wolf's right to continue bargaining with the Union.

* The Honorable Charles B. Renfrew, United States District Judge, Northern District of California, sitting by designation.

The session ended shortly thereafter with Sky Wolf having submitted no counter-proposals to those of the Union.

On July 18, 1969, the Council indicated by letter that it would be unable to participate in further negotiations with the Union until the representation question had been determined, but that with the Union's consent, Sky Wolf was prepared to institute certain wage increases.

On July 23, 1969, the charges giving rise to this case were filed with the Board, alleging that Sky Wolf had engaged in conduct violative of § 8(a)(1) and (5) of the Act, by (1) circulating or causing to be circulated a decertification petition, (2) refusing to bargain with the Union, (3) bypassing the Union as the exclusive bargaining representative, and (4) by threats and promises of benefit to employees in order to get them to withdraw support from the Union.

On July 24, 1969, as requested by the Council, the Union indicated its opposition to the unilateral imposition of benefits by Sky Wolf. After a meeting of the employees, strike action was commenced on August 6, 1969. Immediately thereafter Sky Wolf unilaterally put into effect, retroactive to July 1, 1969, the Company's last wage offer and a plan for dependent health benefits, which had been a subject of discussions with the Union. On August 8, 1969, all the employees, except Ronald Lorenzo, returned to work. Later in the day, when Lorenzo attempted to return to work, Sky Wolf refused to reinstate him, claiming to have hired a replacement.

II

On petition for enforcement of an order from the NLRB, the Court must determine whether the findings of the Board are supported by substantial evidence on the record considered as a whole. As to each of the five violations found by the Board, we find such evidence to exist, and we therefore grant the Board's petition.

*Respondent violated § 8(a)(1) of the Act by assisting with the initiation and circulation of a decertification petition.*

█ In holding that Respondent had assisted with the initiation and circulation of a decertification petition, thereby violating § 8(a)(1) of the Act, the Board made very extensive findings as to the involvement of General Manager Dartez and non-union salesmen Evans and Guadagno and warehouse foreman McDonald in the circulation of the petition.

Though we find substantial evidence on the record as a whole to support the Board's finding that McDonald was a supervisor within the meaning of the Act, 29 U.S.C. § 152(11), and that the activities of Evans and Guadagno with respect to the decertification petition were attributable to Respondent, the Board's findings as to General Manager Dartez, standing alone, are enough to sustain the Board's decision and order.

It is undisputed that Dartez brought employee Perri to his office and made certain promises to him, conditioned upon his signing the decertification petition. Under these circumstances, it is well established that:

"Section 8(a)(1) of the Act makes it unlawful for an employer to instigate and promote a decertification proceeding or induce employees to sign any other form of union-repudiating document, particularly where the solicitation is strengthened by express or implied threats of reprisal or promises of economic benefit." N.L.R.B. v. Birmingham Publishing Co., 262 F.2d 2, 7 (5th Cir. 1958). Accord N.L.R.B. v. Parma Water Lifter Co., 211 F.2d 258, 262 (9th Cir. 1954); cert. denied 348 U.S. 829, 75 S.Ct. 51, 99 L.Ed. 654 (1954).

Accordingly, we find substantial evidence on the record as a whole to support the Board's finding that Respondent assisted in the initiation and circu-

lation of a decertification petition, and thereby violated § 8(a)(1) of the Act.

*Respondent violated § 8(a)(1) and (5) by its refusal to bargain with the Union.*

■ There is no dispute that Respondent ceased bargaining with the Union on July 18, 1969. The Board was thus called upon to decide whether Respondent's refusal to negotiate rested on good-faith doubt as to the Union's continuing majority, or, if circumstances, including Respondent's conduct with respect to the decertification petition, negated such a claim. Reasonable doubt as to majority status must only be asserted in good faith, and cannot be raised in the context of employer activity aimed at causing disaffection from the union. C & C Plywood Corp., 163 NLRB 1022 (1967), enforced 413 F.2d 112 (9th Cir. 1969).

As the court noted in N.L.R.B. v. Parma Water Lifter Co., *supra*, 211 F.2d at 263:

" 'Petitioner [the employer] cannot, as a justification for its refusal to bargain with the Union, set up the defection of union members which it had induced by unfair labor practices * * *. It cannot thus, by its own action, disestablish the Union as the bargaining representative of the employees, previously designated as such of their own free will. Petitioner's refusal to bargain under those circumstances was but an aggravation of its unfair labor practice in destroying the majority's support of the Union, and was a violation of [§ 8(a)(1) and (5)].' Medo Photo Supply Corp. v. National Labor Relations Board, 321 U.S. 678, 687, 64 S.Ct. 830 [88 L.Ed. 1007]."

We are in accord and, having upheld the Board's finding that Respondent did assist in the circulation of the decertification petition, also find the Board's finding that Respondent's refusal to bargain was in violation of § 8(a)(1) and (5) to be supported by substantial evidence on the record.

*Respondent violated § 8(a)(1) and (5) by unilaterally instituting wage increases and dependent health benefits.*

■■ It is established that as long as the bargaining obligation is not extinguished, the company has a continuing duty to bargain, without instituting unilateral benefit changes, even after expiration of the prior agreement. Hinson v. N.L.R.B., 428 F.2d 133 (8th Cir. 1970).

In justification of its unilateral action, Respondent asserts (1) that the changes were agreed to by the Union, prior to implementation, and (2) that the parties had bargained to impasse. We find the first assertion to be totally without merit, given the clear expression of intent to the contrary in the Union's letter to the Council of July 24, 1969. Further, it cannot realistically be contended that an impasse in bargaining had been reached. At the second negotiating session, Respondent terminated further negotiations, having failed to submit any of its own proposals. Cf. Carpinteria Lemon Ass'n v. N.L.R.B., 240 F.2d 554 (9th Cir. 1956); cert. denied, 354 U.S. 909, 77 S.Ct. 1295, 1 L. Ed.2d 1427 (1956).

We thus find the Board's decision that Respondent acted unilaterally and in violation of § 8(a)(1) and (5) to be supported by substantial evidence on the record as a whole.

*Respondent violated § 8(a)(1) by statements that interfered with employees' exercise of their Section 7 rights.*

■ The Board also found certain statements attributable to Respondent to have interfered with the employees' exercise of their Section 7 rights, thereby violating § 8(a)(1). N.L.R.B. v. Ambrose Dist. Co., 358 F.2d 319 (9th Cir.

1966). These statements were to the effect that Respondent would not sign a contract with the Union.

Respondent's sole basis for disagreement with the Board's findings goes to the credibility of certain witnesses, appearing before the trial examiner. However, the findings of the Board with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive. 29 U.S.C. § 160(f). The trial examiner and the Board both noted conflicts in the testimony but, for reasons clearly set out in their respective findings, resolved them against Respondent's position. We find the evidence supporting the Board's finding to be substantial on the record as a whole.

*Respondent violated § 8(a)(3) and (1) by refusing to reinstate employee Lorenzo.*

In determining whether Respondent's refusal to reinstate Lorenzo violated the Act, the Board was called upon to determine whether that refusal was based on the fact that, as Respondent claimed, Lorenzo had quit his job and a replacement had been hired, or, as the Union claimed, because of Lorenzo's continued Union activity.

The Board rejected Respondent's contention based on General Manager Dartez's admission that had Lorenzo returned to work with the others, he would have been employed, and the fact that there were no replacements hired between that time and Respondent's refusal to rehire Lorenzo.

The testimony as to whether or not Lorenzo had quit raises a question of credibility. Under the statutory rule, 29 U.S.C. § 160(f), we uphold the Board's determination. Thus, we find the Board's decision as to the § 8(a)(3) and (1) violations to be supported by substantial evidence upon the record as a whole.

Accordingly, the Board's petition for enforcement of its order is granted in full.